

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-1995

# Bryant v Sylvester

Precedential or Non-Precedential:

Docket 94-1635

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Bryant v Sylvester" (1995). *1995 Decisions*. Paper 160.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/160

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-1635

_____

ANDRE M. BRYANT; FATHERS' AND CHILDREN'S
EQUALITY, INC.

Appellees,

vs.

ESTHER R. SYLVESTER, HONORABLE,
Administrative Judge-Family Division in her
official and individual capacity; NANCY
SOBOLEVITCH, ESQUIRE, Court Administrator in
her official and individual capacity; GEOFF
GALLAS, Executive Court Administrator in his
official and individual capacity; MATTHEW
TIERNEY, Court Administrator-Family Division
in his official and individual capacity;
JOSEPH DI PRIMIO, ESQUIRE, Court
Administrator in his official and individual
capacity; ANDREA HOFFMAN-JELIN, ESQUIRE,
Director of Children and Youth Services in
her official and individual capacity

Appellants.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 94-cv-01990)

_____

ARGUED DECEMBER 7, 1994

OPINION VACATED JUNE 1, 1995

SUBMITTED PURSUANT TO LAR 34.1(a)

ON PANEL REHEARING JUNE 5, 1995

BEFORE:  STAPLETON, ROTH and LEWIS, Circuit Judges.

(Filed   June 8 , 1995)

_____

David M. Donaldson                    Arlin M. Adams, Esq.
Howard M. Holmes                      Michael J. Barry, Esq.
Supreme Court of Pennsylvania         Schnader, Harrison &
Administrative Office of PA Courts    Lewis Ste 3600
1515 Market Street, Suite 1414        1600 Market St.
Philadelphia, PA  19102               Philadelphia, PA 19103

           Attorneys for Appellants


Ronald K. M. Williams
Northwest Legal Center
Post Office Box 43175
Philadelphia, PA  19129

           Attorney for Appellees

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

        This case raises an issue of apparent first impression: whether an order denying the Rooker-Feldman defense is final as a collateral order.  We conclude that an order denying the Rooker-Feldman defense is not final as a collateral order and is not immediately appealable under the collateral order doctrine.  We will therefore dismiss this appeal for lack of appellate jurisdiction.

I.

The Family Court Division of the Court of Common Pleas of Philadelphia County operates a nursery at the Family Court Building in Philadelphia. In operating this nursery, the Family Court provides an area for supervised visitation in cases in which supervised visitation has been ordered by the Family Court. In early November of 1993, the Honorable Esther Sylvester, Administrative Judge of the Family Court Division of the Philadelphia Court of Common Pleas, and a defendant in this case, approved the closing of the Family Court nursery on two dates: December 26, 1993 and January 2, 1994. The plaintiffs, Andre Bryant, a non-custodial parent restricted, by court order, to visitation in the Family Court-operated nursery, and Fathers' and Children's Equality, Inc., a non-profit Pennsylvania corporation "chartered to insure the continual access of children to their non-custodial parents and extended family members," Plaintiffs' brief at 3, sought in Pennsylvania Commonwealth Court to enjoin the defendants from closing the nursery on these days. The matter was transferred on jurisdictional grounds to the Pennsylvania Supreme Court where the plaintiffs' request for a preliminary injunction was denied without hearing. No appeal to the United States Supreme Court was sought.

In early March of 1994, Judge Sylvester again authorized the closing of the Family Court nursery, this time on April 3, 1994. Soon after the authorization of this additional nursery closing, the plaintiffs filed this class action lawsuit in which they claim that by closing the nursery, the defendants violated their rights under the First and Fourteenth Amendments.

In lieu of filing an answer, the defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (6).  The defendants contended, inter alia, that judicial immunity and the Rooker–Feldman doctrine required dismissal of the plaintiffs' complaint. The district court denied the defendants' motion to dismiss and ordered that discovery proceed.  This appeal followed.[1]

---

[1].    The question of the applicability of judicial immunity is not before us, as that issue, though argued in the defendants' brief, was waived at oral argument, during which the following exchange took place:

| The Court: | You are not appealing from the denial of your motion insofar as it related and relied on judicial immunity? |
|---|---|
| Answer: | No, your honor, it is purely the Rooker–Feldman and the qualified immunity which applies to all the defendants . . . . |

. . . .

| The Court: | Let me make sure I understand you. I understood you in response to my question on direct to say that the issue of whether your motion was wrongfully denied insofar as it relied on judicial immunity was not before us, you were not pressing that argument . . . you wrote a section in your brief on it, but you are not -- |
|---|---|
| Answer: | I am not pressing the judicial immunity argument . . . . |
| The Court: | You are not just talking about your argument this morning, your oral argument, you are saying we do not have to address those issues because your clients are no longer relying on them? |

## II.

Ordinarily, we review only "final" decisions of the district court under 28 U.S.C. § 1291.[2]  <u>Federal Ins. Co. v. Richard I. Rubin & Co., Inc.</u>, 12 F.3d 1270, 1279 (3d Cir. 1993). A decision is final only when there is a "`decision by the

(..continued)
Answer:          I do not press the judicial immunity argument, your honor.

Nor is the issue of <u>qualified</u> immunity before us, the defendants arguments to the contrary notwithstanding.  Having found that the defendants did not assert qualified immunity, the district court did not consider the applicability of the qualified immunity defense.  In this appeal, the defendants contend, with apparent support in the trial record, that they did in fact argue qualified immunity in the district court.  However, the defendants did not assert qualified immunity in their motion to dismiss, nor did they argue qualified immunity in their brief in support of the motion.  In a brief styled "Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint and in Further Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment," which the defendants filed some six days prior to the district court's denial of their motion to dismiss, the defendants for the first time argued qualified immunity.  Under these circumstances, the district court properly refrained from considering the issue of qualified immunity.  Had the district court considered qualified immunity, the plaintiffs would have been prejudiced by not having had an opportunity to respond to the defendants' arguments regarding the applicability of qualified immunity prior to the district court's ruling on the defendants' motion.  And because the district court did not err in refusing to consider qualified immunity, we lack jurisdiction to hear the defendants' appeal to the degree it raises the issue of qualified immunity.  <u>See</u> <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1460 (3d Cir. 1992) ("[o]ur jurisdiction to hear immunity appeals is limited only where the district court does not address the immunity question below, or where the court does not base its decision on immunity <u>per</u> <u>se</u>").

[2].    28 U.S.C. § 1291 provides:

> The courts of appeals . . . shall have
> jurisdiction of appeals from all final
> decisions of the district courts of the
> United States . . . .

district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. (citation and internal quotation marks omitted). According to the defendants, however, we have appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The defendants contend the district court's order denying the defendants' motion to dismiss is appealable under the "collateral order" doctrine first articulated in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). In Cohen, the Supreme Court held that a "small class" of collateral orders are final and appealable under 28 U.S.C. § 1291 even though they do not terminate the underlying litigation. Cohen, 337 U.S. at 546. For an order to come within Cohen's collateral order rule, it must satisfy three tests: first, the order must "conclusively determine" the disputed question; second, it must "resolve an important issue completely separate" from the merits of the action; and third, it must be "effectively unreviewable" on appeal from a final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468–69 (1978). If the order at issue fails to satisfy any one of these requirements, it is not an appealable collateral order. See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276 (1988); Communication Workers v. American Tel. & Tel., 932 F.2d 199, 205 (3d Cir. 1991).

The Supreme Court has repeatedly referred to the collateral order doctrine as a "narrow exception" to the final

judgment rule,[3] see, e.g., Richardson–Merrell, Inc. v. Koller,
472 U.S. 424, 430 (1985) (citation omitted), and we have,
accordingly, construed the doctrine narrowly "`lest the exception
swallow up the salutary general rule' that only final orders may
be appealed." Yakowicz v. Pennsylvania, 683 F.2d 778, 783 n.10
(3d Cir. 1982) (citation omitted); see Transtech Industries, Inc.
v. A & Z Septic Clean, 5 F.3d 51, 57 (3d Cir. 1993) ("We have
followed the Supreme Court's admonition and `have consistently
construed the Cohen exception narrowly rather than expansively.'"
(citations omitted)). Strict construction of the collateral
order doctrine is designed to further the long–standing
Congressional policy against piecemeal appeals which underlies
the final judgment rule. See Lusardi v. Xerox Corp., 747 F.2d

---

[3]. Recently, the Supreme Court observed that the collateral
order doctrine is best understood not as an exception to the
"final decision" rule laid down by Congress in 28 U.S.C. § 1291,
"but as a `practical construction' of it." Digital Equipment
Corporation v. Desktop Direct, Inc., 114 S. Ct. 1992, 1995
(1994).

> We have repeatedly held that the statute
> entitles a party to appeal not only from a
> district court decision that "ends the
> litigation on the merits and leaves nothing
> more for the court to do but execute the
> judgment," but also from a narrow class of
> decisions that do not terminate the
> litigation, but must, in the interest of
> "achieving a healthy legal system,"
> nonetheless be treated as "final."

Id. (citations omitted).

174, 177 (3d Cir. 1984).[4]  To guard against the temptation of expanding the doctrine's reach, the Supreme Court has instructed that the issue of the immediate appealability of orders that do not terminate litigation is to be determined for the entire category to which the order belongs, "without regard to the chance that the litigation at hand might be speeded, or a `particular injustice' averted, by a prompt appellate court decision."  Digital Equipment Corporation v. Desktop Direct, Inc., 114 S. Ct. 1992, 1996 (1994) (citation omitted).

        Before determining whether the district court's order denying the defendants' Rooker-Feldman defense qualifies as a collateral order, a word or two is in order concerning Rooker-Feldman.  The Rooker-Feldman doctrine provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court adjudications or to hear constitutional

---

[4].    We have stated that the final judgment rule serves a number of salutary purposes:

> It is intended to ensure efficient administration of scarse judicial resources.  It facilitates maintenance of "the appropriate relationship between [trial and appellate] courts."  In addition, in cases where the litigants may have unequal economic resources, it protects the judicial process and its participants from the delay which can prove advantageous to a well-financed litigant, and fatal to the less well-endowed.

Lusardi v. Xerox Corp., 747 F.2d 174, 177 (3d Cir. 1984) (citations omitted); see also Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981).

claims that are "inextricably intertwined" with the state court's decision. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983). See also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) ("Under the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or modify" a state court judgment.). This limitation upon federal district court subject matter jurisdiction is usually said to derive from 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court . . . ." See, e.g., Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992). In addition to this formal statutory basis for the Rooker-Feldman doctrine, we have identified other justifications for the rule:

> As with Younger abstention, which requires federal courts to abstain when there is a pending state court proceeding, part of the justification for Rooker-Feldman is respect for state courts. Just as federal district courts should presume that pending state court proceedings can correctly resolve federal questions, they should also presume that completed state court proceedings have correctly resolved these questions.

> A second justification for Rooker-Feldman stems from its similarity to claim preclusion. Like claim preclusion, Rooker-Feldman is partly concerned with finality, with ensuring that litigants do not take multiple bites from the same apple. Once litigants' claims have been adjudicated in the state court system, they should not also have access to the entire federal court system.

<u>Guarino v. Larsen</u>, 11 F.3d 1151, 1157 (3d Cir. 1993) (citations

omitted).  With this sketch of the <u>Rooker-Feldman</u> doctrine's

contours in mind, we turn now to evaluate the immediate

appealability of the district court's order denying the

defendants their <u>Rooker-Feldman</u> defense.

III.

A decision denying a motion to dismiss for lack of

subject matter jurisdiction is considered to fall outside the

<u>Cohen</u> exception to the final decision rule.  <u>See</u> <u>Transtech</u>

<u>Industries, Inc. v. A & Z Septic Clean</u>, 5 F.3d 51, 58 (3d Cir.

1992); <u>United States v. Layton</u>, 645 F.2d 681, 683 (9th Cir. 1981)

(holding that challenges to subject matter jurisdiction generally

fail the third prong of the <u>Cohen</u> test); <u>Moore's Federal Practice</u>

¶ 110.10 p. 74 (citing cases).  Likewise, decisions denying

assertions of <u>res</u> <u>judicata</u> are considered to be beyond the

collateral order exception.  <u>See</u> <u>Digital Equipment Corporation</u>,

114 S. Ct. at 1998; <u>Transtech Industries</u>, 5 F.3d at 58.  Because

the <u>Rooker-Feldman</u> doctrine has a close affinity both with

notions of subject matter jurisdiction and claim preclusion, we

might be tempted to resolve the issue of the immediate

appealability of <u>Rooker-Feldman</u> denials by way of analogy to

these categories of claims.  However, underlying the <u>Rooker-</u>

<u>Feldman</u> doctrine are concerns rooted in federalism and comity,

concerns not necessarily present within the concepts of claim

preclusion and subject matter jurisdiction.  Therefore, we will

address the immediate appealability of the denial of a <u>Rooker-</u>

<u>Feldman</u> defense with explicit reference to the issue of respect for state courts that underlies the <u>Rooker-Feldman</u> doctrine.

Because we conclude that the third requirement -- that the order be "effectively unreviewable" on appeal from a final judgment -- is not met in this case, we need not discuss the first and second prerequisites for the collateral order doctrine to determine the immediate appealability of a denial of a <u>Rooker-Feldman</u> defense.  <u>See</u> <u>Communication Workers</u>, 932 F.2d at 205 n.6 ("Since we find that the district court's order does not satisfy the third prong of <u>Cohen</u>, we do not consider whether the first and second prongs of <u>Cohen</u> are satisfied.").  The Supreme Court has explained that, as a general rule, an order is "effectively unreviewable" only where "the order at issue involves `an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'"  <u>Lauro Lines S.R.L. v. Chasser</u>, 490 U.S. 495, 499-500 (1989) (citation omitted); <u>accord</u> <u>Zosky v. Boyer</u>, 856 F.2d 554, 561 (3d Cir. 1988) (to be appealable under the collateral order doctrine, an order must be such that "review [of the order] postponed will, in effect, be review denied").

The Court's most recent discussion of the collateral order doctrine appears in <u>Digital Equipment Corporation</u>, decided less than a year ago.  In that case, Desktop Direct, Inc. ("Desktop") sued Digital Equipment Corporation ("Digital") for unlawful use of the "Desktop Direct" name.  <u>Digital Equipment Corporation</u>, 114 S. Ct. at 1995.  Soon after the filing of the complaint, the parties reached a settlement agreement.  Pursuant

to the agreement, Digital agreed to pay Desktop a sum of money for the right to use the "Desktop Direct" trade name and corresponding trademark, and for waiver of all damages and dismissal of the trademark infringement suit brought by Desktop against Digital. Id. Following the settlement agreement, Desktop filed a notice of dismissal in the district court. Several months later, however, Desktop moved to vacate the dismissal and rescind the settlement agreement on the ground that Digital had misrepresented material facts during the settlement negotiations. Id. The district court granted this motion. Digital then appealed. The Court of Appeals for the Tenth Circuit dismissed Digital's appeal for lack of appellate jurisdiction, holding that the order of the district court was not appealable under section 1291 because it neither ended the litigation nor fell within the collateral order exception to the final judgment rule. Id. The Supreme Court granted certiorari to consider whether an order denying effect to a private settlement agreement comes within the ambit of the collateral order rule. Id.

During the course of its analysis of this question, analysis which led to an affirmance of the Tenth Circuit's dismissal of Digital's appeal, the Court rejected Digital's argument that the identification of some interest or right that would be "irretrievably lost" per se satisfies the third Cohen requirement:

> [T]he strong bias of § 1291 against piecemeal appeals almost never operates without some cost. A fully litigated case can no more be

untried than the law's proverbial bell can be unrung, and almost every pretrial or trial order might be called `effectively unreviewable' in the sense that relief from error can never extend to rewriting history. Thus, erroneous evidentiary rulings, grants or denials of attorney disqualification, and restrictions on the rights of intervening parties may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . . But if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one, and so the mere identification of some interest that would be "irretrievably lost" has never sufficed to meet the third Cohen requirement.

Digital Equipment Corporation, 114 S. Ct. at 1998 (citations omitted) (emphasis supplied).

The Court also rejected Digital Equipment's contention that a party's ability to characterize the right allegedly denied as a "right not to stand trial" is both sufficient and necessary for a finding that the order appealed from is a collateral order. This contention, the Court explained, "is neither an accurate distillation of our case law nor an appealing prospect for adding to it." Id. The Court further explained that limiting the collateral order analysis to a focus upon whether the interest asserted could be called a "right not to stand trial" is inadequate to protect against "the urge to push the § 1291 limits." Id.

We have, after all, acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a "right not to stand trial." Allowing immediate appeals to vindicate every such right would move § 1291 aside for claims that the

> district court lacks personal jurisdiction, that the statute of limitations has run, that the movant has been denied his [or her] Sixth Amendment right to speedy trial, that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim. Such motions can be made in virtually every case, and it would be no consolation that the party's meritless summary judgment motion or res judicata claim was rejected on immediate appeal; the damage to the efficient and congressionally mandated allocation of judicial responsibility would be done, and any improper purpose the appellant might have had in saddling its opponent with cost and delay would be accomplished. Thus, precisely because candor forces us to acknowledge that there is no single "obviously correct way to characterize" an asserted right, we have held that § 1291 requires courts of appeals to view claims of a "right not to be tried" with skepticism, if not a jaundiced eye.

Id. at 1998-99 (citations omitted).

In the wake of Digital Equipment Corporation, a party's ability to characterize a district court's decision as denying an irreparable "right not to stand trial" of itself will not suffice to entitle that party to an immediate appeal of the decision. See Digital Equipment Corporation, 114 S. Ct. at 1998. Following Digital Equipment Corporation, the analysis required under the third prong of the Cohen test does not entail so much the characterization of the right denied as it does inquiry into the relative value or importance of the interests "that would be [forever] lost through rigorous application of a final judgment requirement. Id. at 2001.

The defendants contend that the interests in federalism and comity sought to be protected by Rooker-Feldman would be irreparably harmed by the very fact of federal judicial inquiry into the state court decision at issue. "Once a state adjudication is subjected to discovery, inquiry, review, trial, etc., the integrity of the decision, as protected from federal court review by Rooker-Feldman is gone forever." Defendants' Reply at 6. According to the defendants, Rooker-Feldman is the "equitable corollary to judicial immunity":

> [I]t is the immunity state decisions enjoy from federal district court review. Akin to Eleventh Amendment, absolute, or qualified immunity, Rooker-Feldman is of no practical value after final judgment and appeal, i.e., after federal review of a state court adjudication takes place. Any benefit to state courts conferred by Rooker-Feldman "is for the most part lost as litigation proceeds past motion practice." Quite simply, the very fact of a federal court inquiry, without immediate appeal, into a state court adjudication . . . renders Rooker-Feldman worthless.

Defendants' Reply at 7-8.

We disagree with the defendants' contention that Rooker-Feldman is of no practical value if its ultimate vindication must await the entry of final judgment following district court review of the state court adjudication at issue. The Rooker-Feldman doctrine's value as a protector of state courts is not irreparably undermined by district court review of state court adjudications; so long as district court review of a state court adjudication is followed by the proper application of the doctrine at the court of appeals level, the interests that

Rooker-Feldman seeks to further will be secured.  To understand why this is so, one need only compare Rooker-Feldman to the types of claims already deemed to fall within the ambit of the collateral order doctrine.

The purpose of the classic immunities -- Eleventh Amendment, absolute and qualified immunity -- all considered to fall within the collateral order doctrine, is to prevent the holder of the immunity from being dragged into federal district court to answer to civil suits for damages.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (stating that qualified immunity is an immunity from suit rather than a mere defense to liability; "and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial"); Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, 113 S. Ct. 684, 689 (1993) ("`the very object and purpose of 11th Amendment [are] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties'" (citation omitted)); Nixon v. Fitzgerald, 457 U.S. 731 (1982) (the essence of absolute immunity is the possessor's entitlement not to have to answer for his or her conduct in a civil damages action).  It is easy to see how this purpose would be effectively thwarted were an order denying qualified immunity, for example, not held to be immediately appealable.  Were such an order not immediately appealable, the qualified immunity holder would be forced to endure the burden of a trial -- the very "harm" the immunity is supposed to immunize the holder against -- before being permitted to seek the vindication of the immunity

right. Simply put, the immunity holder would obtain absolutely nothing of value from the ultimate vindication of the immunity interest following a trial in the district court.[5]

Indeed, a finding that the failure to allow immediate appeal would lead to the infliction of some irreparable harm on an actual person or entity represents a common thread running through the cases in which we have found that the order in question constitutes a collateral order. In Praxis Properties v. Colonial Sav. Bank, 947 F.2d 49 (3d Cir. 1991), for example, a case in which we found an order denying Resolution Trust Corporation ("RTC") a stay under the stay provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1812(d)(12)[6] to be a collateral order, we stated:

---

[5]. Precisely the same can be said, and has been said by the Supreme Court, with respect to orders denying the protection of the Speech or Debate Clause, as well as orders denying the right not to stand trial on double jeopardy grounds. See Helstoski v. Meanor, 442 U.S. 500 (1979) (holding that an order denying the protection of the Speech or Debate Clause is immediately appealable); Abney v. United States, 431 U.S. 651 (1977) (holding that an order denying the right not to stand trial on double jeopardy grounds is immediately appealable).

[6]. 12 U.S.C. § 1821(d)(12) provides:

> After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed --
>
> (i)  45 days, in the case of any conservator; and
>
> (ii) 90 days, in the case of any receiver,

> Congress afforded RTC this right to a stay
> under § 1821(d)(12) because it realized that
> upon RTC's appointment as receiver or
> conservator for a failed thrift, RTC is
> likely to find the thrift in a state of
> profound disarray and may require some
> breathing room to orient itself and determine
> how best to proceed with pending litigation.
> If the district court denies a proper request
> for a stay under § 1821(d)(12), RTC's
> statutory right to a short litigation cease-
> fire, like a government official's right to
> qualified immunity, is "irretrievably lost"
> absent immediate appeal.

Id. at 60.  Similarly, in Federal Ins. Co. v. Richard I. Rubin &
Co., Inc., 12 F.3d 1270 (3d Cir. 1993), a case in which we
extended the collateral order doctrine to a claim for immunity
from suit conferred by the Foreign Sovereign Immunities Act
("FSIA"), 28 U.S.C. §§ 1602-1611, we stated:

> [P]roviding review only after a trial [of the
> order denying the FSIA defense] would destroy
> the "legal and practical value" of their
> sovereign immunity defense.  At the post-
> trial stage of the proceeding, the Dutch
> parent corporations will have been forced to
> endure the very burden they are arguing they
> should not be subjected to in the first place
> -- a trial on the merits.

Id. at 1282.  See also In re School Asbestos Litigation, 842 F.2d
671 (3d Cir. 1988) (holding that an order denying a party the
right to engage in public communications with persons and in fora
unrelated to the litigation was immediately appealable because
"`the loss of First Amendment freedoms, for even minimal periods
of time, unquestionably constitutes irreparable injury.'"

(..continued)
> in any judicial action or proceeding to which
> such institution is or becomes a party.

(citation omitted)).  In each of these cases, crucial to our conclusion that the order in question constituted an immediately appealable collateral order was the fact that failure to afford immediate appeal would have rendered the right asserted worthless to the actual entity holding the right.  The same simply cannot be said in the context of Rooker-Feldman.

One of the interests that the Rooker-Feldman doctrine seeks to promote is respect for state courts.  Guarino, 11 F.3d at 1157.  To further this interest, the Rooker-Feldman doctrine precludes federal district court review of state court adjudications.  See id.  Significantly, the protection that Rooker-Feldman affords attaches not to the state courts themselves, but rather to their adjudications.  Unlike people, states and state entities -- the direct recipients and beneficiaries of the classic immunities, for example -- adjudications do not suffer irreparably by being haled into federal district court for review.  Indeed, once a court of appeals rules that under Rooker-Feldman, the district court lacked subject matter jurisdiction to review the state court adjudication, it is, both as a practical as well as a legal matter, as if the state court adjudication had never been reviewed by a federal district court in the first place.  So long as the state court adjudication's Rooker-Feldman-derived "immunity" is acknowledged and vindicated by the court of appeals following the entry of a final judgment, the interest in

respecting state courts by holding their adjudications beyond federal district court scrutiny is _adequately_ protected.[7]

By concluding that the denial of a _Rooker-Feldman_ defense does not give rise to an immediately appealable collateral order, we do not gainsay the importance of the interests in federalism and comity that the _Rooker-Feldman_ doctrine seeks to protect.  We simply believe that these interests are not irreparably harmed through rigorous application of the final judgment rule.  We note that in other contexts these same interests have been understood to be adequately vindicable on appeal following the entry of final judgment.  See _Coleman by Lee v. Stanziani_, 735 F.2d 118 (3d Cir. 1984) (holding that the denial of a motion to dismiss asserting _Younger v. Harris_ abstention grounds satisfies none of the _Cohen_ requirements).

## IV.   CONCLUSION

Having concluded that an order denying the _Rooker-Feldman_ defense is not immediately appealable under the collateral order rule, we will dismiss for lack of appellate

---

[7].   We say that the Rooker-Feldman interests are _adequately_ vindicable on appeal from a final judgment because we recognize, as has the Supreme Court, that section 1291 never operates without some cost.  _Digital Equipment Corporation_, 114 S. Ct. at 1998.  Litigants are always burdened in ways that are "only imperfectly reparable by appellate reversal of a final district court judgment."  _Id_.

jurisdiction the defendants' appeal from the district court's order denying their Rooker-Feldman defense.