**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANGELA SUASNAVAS;
MARGARET LUETHJE; ARNOLD
LUETHJE; EVIE BURRIS,

      Plaintiffs-Appellees,

v.

VALEDA STOVER; VONTREVA
CARLTON; RUSSELL JONES,

      Defendants-Appellants.

No. 05-5171
(D.C. No. 04-CV-540-TCK-SAJ)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY** and **EBEL**, Circuit Judges, and **KANE**,[**] District Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

In this civil rights action brought pursuant to 42 U.S.C. § 1983, defendants-appellants Valeda Stover, Vontreva Carlton, and Russell Jones appeal from the denial of their motion to dismiss plaintiffs' federal constitutional claims under Fed. R. Civ. P. 12(b)(6). Because a portion of this appeal raises legal issues pertaining to defendants' qualified immunity defense, we conclude that we have appellate jurisdiction over that part of this interlocutory appeal, and we affirm the district court's denial of qualified immunity. We also conclude, however, that we do not have appellate jurisdiction to review the district court's rulings with regard to defendants' *Rooker-Feldman* and collateral estoppel defenses. We therefore dismiss the portions of this appeal that pertain to those rulings for lack of jurisdiction.

## I.

Plaintiff Angela Suasnavas (Suasnavas) is the natural mother of Shari Kay Phillips (Phillips). Plaintiffs Margaret Luethje and Arnold Luethje (the Luethjes) are married, and they are Suasnavas's mother and step-father. Plaintiff Evie Burris (Burris) is Suasnavas's half-sister, and she is the daughter of Margaret Luethje and Arnold Luethje. Burris also has children of her own, and the Luethjes are the natural grandparents of Burris's children. Defendants Stover, Carlton, and Jones are or were child welfare social workers employed by the Oklahoma Department of Human Services.

Plaintiffs filed a civil rights action against defendants under 42 U.S.C. § 1983, alleging, among other things, that defendants violated their familial association rights under the Due Process Clause of the Fourteenth Amendment in connection with a series of Oklahoma state-court child welfare proceedings concerning Suasnavas and Phillips. Specifically, according to plaintiffs' complaint, in the state-court proceedings, which apparently span a four-year time frame from 2000 to 2004, defendants: (1) falsely accused Arnold Luethje of having sexually molested Suasnavas when she was a child; (2) removed Phillips from Suasnavas's custody based on false accusations that Suasnavas had endangered Phillips by leaving her in the Luethjes' home; (3) threatened Suasnavas that Phillips would never be returned to her if she continued to associate with the Luethjes, which threats caused Suasnavas not to associate with the Luethjes for over a year; and (4) threatened Burris that her children would be taken into state custody if she left them at the Luethjes' home, which threats caused Burris to stop leaving her children at the Luethjes' home and made her "afraid to associate and visit [the Luethjes] freely," Aplts. App. at 21.

Based on these allegations, plaintiffs claim that defendants have violated their constitutional right to associate with other members of their family. First, Suasnavas alleges that she has a constitutionally protected liberty interest in the care, custody, and control of her daughter, Phillips, and she alleges that defendants violated her procedural and substantive due process rights when they

-3-

constructively terminated her parental rights with regard to Phillips without a hearing and placed Phillips in the permanent custody of her paternal grandfather in Florida. Second, the Luethjes allege that they have a constitutionally protected liberty interest in associating with their adult children, Suasnavas and Burris, and their grandchildren, Phillips and Burris's children, and they allege that defendants have violated their familial association rights with regard to those relationships.[1] Third, Burris alleges that she has a constitutionally protected liberty interest in associating with her parents, the Luethjes, and she alleges that defendants have violated her right to associate with her parents.[2]

Defendants Stover, Carlton, and Jones filed a motion to dismiss plaintiffs' federal constitutional claims under Fed. R. Civ. P. 12(b)(6), arguing that: (1) the Luethjes and Burris lacked standing; (2) defendants were immune from liability under § 1983 based on the doctrine of qualified immunity; (3) plaintiffs claims were barred by the *Rooker-Feldman* doctrine; and (4) Suasnavas's claims were

---

[1]    Based on the allegations in plaintiffs' complaint, it appears that the Luethjes are also alleging that defendants have violated their right to associate with one of their other daughters, Christie Luethje, and her children. The allegations regarding Christie Luethje do not raise any separate or unique legal issues that must be addressed to resolve the qualified immunity issues raised by this appeal, however, and we therefore do not need to address them.

[2]    Based on the allegations in plaintiffs' complaint, it appears that Burris is also alleging that defendants have violated her children's right to associate with their grandparents, the Luethjes. Burris's children have not been named as plaintiffs in this case, however. As a result, we do not need to address Burris's allegations regarding her children.

-4-

barred by the doctrine of collateral estoppel. The district court denied

defendants' motion to dismiss, and this appeal followed. In this appeal,

defendants are attempting to appeal the district court's rulings with regard to their

defenses under the doctrines of qualified immunity, *Rooker-Feldman*, and

collateral estoppel.

## II.

### A. Appellate Jurisdiction.

Because this appeal presents the purely legal question of whether the facts

alleged in plaintiffs' complaint support a violation of clearly established federal

law, this court has appellate jurisdiction to review the district court's denial of

qualified immunity. As we recently explained:

> This court has appellate jurisdiction over "final decisions" of district
> courts. 28 U.S.C. § 1291. Under the "collateral order" doctrine,
> however, some district court orders are considered "final" even
> though they are entered before a case has ended. *Cohen v. Beneficial
> Indus. Loan Corp.*, 337 U.S. 541, 546-47 . . . (1949). One such
> collateral order permitting interlocutory appeal is a denial of
> qualified immunity. *Mitchell [v. Forsyth]*, 472 U.S. [511, 530
> (1985)]. A denial of qualified immunity is only immediately
> appealable, however, to the extent the district court's decision turns
> on an abstract issue of law. *Id.* at 530 . . . ; *Johnson v. Jones*, 515
> U.S. 304, 313-14, 317 . . . (1995). Thus, an appellate court may
> examine on interlocutory appeal the purely legal question of whether
> the facts alleged by plaintiff support a claim of violation of clearly
> established law. *Mitchell*, 472 U.S. at 528 n. 9. . . .

*Robbins v. Wilkie*, 433 F.3d 755, 761 (10th Cir. 2006).

This does not end our jurisdictional inquiry, however, because the parties have either overlooked or chosen not to address the question of whether the collateral order doctrine provides this court with appellate jurisdiction to review the district court's interlocutory rulings with regard to defendants' *Rooker-Feldman* and collateral estoppel defenses.  We conclude that it does not.

There are three conditions that must be met for collateral order review. The order being appealed must: "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, __ U.S. __, 126 S. Ct. 952, 957 (2006) (internal quotation marks omitted; alteration in original).  As we recently recognized, there are only a few types of cases that can satisfy all of these requirements.

> In *Will*, the Supreme Court's most recent pronouncement on the collateral order doctrine, the Court stressed that only a very few types of interlocutory orders can qualify as immediately appealable collateral orders.  The requirements are "stringent and unless they are kept so, the underlying doctrine will overpower the substantial finality interests . . . § 1291 is meant to further."  [*Will*, 126 S. Ct. at 957] (cites and quotes omitted).  *Will* noted the four kinds of interlocutory orders which may be immediately appealed: those rejecting claims of absolute immunity, qualified immunity, and Eleventh Amendment immunity, and those issuing an adverse ruling on a double jeopardy defense.  *Id.* at 958.

*Bastien v. Office of Senator Ben Nighthorse Campbell*, 454 F.3d 1072, 1074 (10th Cir. 2006) (per curiam).

We conclude that the district court's denial of defendants' *Rooker-Feldman* defense[3] is not immediately appealable under the collateral order doctrine, and, in reaching this conclusion, we adopt the reasoning of the Third Circuit in *Bryant v. Sylvester*, 57 F.3d 308, 312-16 (3d Cir. 1995), *vacated on other grounds by Sylvester v. Bryant*, 516 U.S. 1105 (1996). Specifically, we agree with the Third Circuit that a district court's denial of a *Rooker-Feldman* defense is not "effectively unreviewable" on appeal from a final judgment. *Bryant*, 57 F.3d at 312. As explained by the Third Circuit, "as a general rule, an order is effectively unreviewable only where the order at issue involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Id.* at 313 (internal quotation marks omitted). A *Rooker-Feldman* defense is not such a legal right, however, because "[t]he *Rooker-Feldman* doctrine's value as a protector of state courts is not irreparably undermined by district court review of state court adjudications." *Id.* at 314. To the contrary, "so long as district court review of a state court adjudication is followed by the proper

_____

3    The *Rooker-Feldman* doctrine is derived from 28 U.S.C. § 1257(a), and it "provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments." *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006). As recently explained by the Supreme Court, however, the doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

application of the [*Rooker-Feldman*] doctrine at the court of appeals level, the interests that *Rooker-Feldman* seeks to further will be secured." *Id.*

We likewise conclude that defendants' collateral estoppel defense does not "involve[] an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Id.* at 313 (internal quotation marks omitted). Consequently, we have no difficulty concluding that "[t]he denial of [a] collateral estoppel motion to dismiss is not a collateral order appealable under 28 U.S.C. § 1291." *Unger v. Consol. Foods Corp.*, 693 F.2d 703, 705 (7th Cir. 1982). As a result, we do not have jurisdiction to review the district court's collateral estoppel ruling.

Finally, we decline to exercise our discretion to assert pendent appellate jurisdiction over the *Rooker-Feldman* and collateral estoppel issues. The issues are not inextricably intertwined with defendants' qualified immunity defense, and it is not necessary for us to decide the issues in order to resolve the qualified immunity question.[4] *See Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 970 (10th Cir. 2006) (stating that "[t]he exercise of pendent [appellate] jurisdiction

_____

[4]    We also note that 28 U.S.C. § 1292(b) is not applicable here, as defendants have not availed themselves of § 1292(b)'s certification procedures for interlocutory appeals. *See ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1182, 1186 (10th Cir. 1998) (exercising appellate jurisdiction over *Rooker-Feldman* issue where issue was certified for an interlocutory appeal under 28 U.S.C. § 1292(b)).

. . . is generally disfavored," and that it is only "appropriate to exercise pendent appellate jurisdiction where the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one") (internal quotation marks omitted); *see also Gubitosi v. Kapica*, 154 F.3d 30, 32 n.3, 34 (2d Cir. 1998) (declining to exercise pendent appellate jurisdiction over portions of district court's order that denied defendants' motion for summary judgment based on *Rooker-Feldman* and collateral estoppel defenses).

**B. Standard of Review.**

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, we will also review this defense on a motion to dismiss." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (citing *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992) ("A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.") (internal quotation marks omitted)).

"We review the district court's denial of a motion to dismiss based on qualified immunity de novo." *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1199 (10th Cir. 2003). "We accept all well-pleaded allegations of the complaint as true and consider them in the light most favorable to the

nonmoving party." *Id.* (internal quotation marks omitted).  Further, "[w]e will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted).

## C.  Qualified Immunity Analysis.

"Qualified immunity generally shields from liability for civil damages government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks omitted; alteration in original).  To analyze a qualified immunity defense, this court has adopted a three-part inquiry.

> First, we ask whether the plaintiffs' allegations, if true, establish a constitutional violation. *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005).  If the allegations do not meet that standard, we must dismiss the claim.
>
> Second, if the plaintiffs have alleged a constitutional violation, we examine "whether the law was clearly established at the time the alleged violations occurred." *Roska [ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003) (*Roska II*)].  The law is clearly established if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right. *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006).  Recently, the Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298

(10th Cir. 2004) (discussing *Hope v. Pelzer*, 536 U.S. 730 . . . (2002)).  Thus, government officials must make "reasonable applications of the prevailing law to their own circumstances," *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (internal quotation marks omitted), and they "can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope*, 536 U.S. at 741. . . .

Finally, if the law was clearly established, we proceed to the third part of the inquiry.  We ask whether, in spite of the fact that the law was clearly established, "extraordinary circumstances"–such as reliance on the advice of counsel or on a statute–"'so prevented [the official] from knowing that [her] actions were unconstitutional that [she] should not be imputed with knowledge of a clearly established right." *Roska II*, 328 F.3d at 1251 (internal quotation marks omitted).  "[W]here the right is clearly established, a defendant should only rarely be able to succeed with a qualified immunity defense." *Id.* (internal quotation marks omitted).

*Gomes*, 451 F.3d at 1134-35.

**D.  The Right of Familial Association and the *Trujillo* Decision.**

Plaintiffs claim that defendants have violated their right of familial association under the Due Process Clause of the Fourteenth Amendment.  The right of familial association is a substantive due process right, *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) ("The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association."), and "[t]his court first recognized the right in *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1188-89 (10th Cir. 1985)," *id.* at 1546.

In *Trujillo*, "[w]e read the [plaintiffs'] allegation of a right of familial association as an assertion of the liberty interest discussed in *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244 . . . (1984)." 768 F.2d at 1188 n.4. As we further explained:

> In *Roberts* . . ., the Court held that application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members did not infringe members' freedom of intimate association or their freedom of expressive association. While the Court anchored the freedom of expressive association in the First Amendment, *id.* 104 S. Ct. at 3252, it identified the freedom of intimate association as "an intrinsic element of personal liberty," *id.* at 3251. . . .
>
> In describing this constitutionally protected liberty, the Court recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State. . . ." *Id.* at 3249. Included in that category are "[f]amily relationships, [which] by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." *Id.* at 3250.

*Trujillo*, 768 F.2d at 1188.

In *Trujillo*, the plaintiffs were a mother and her adult daughter, and they "allege[d] that the wrongful death of their [adult] son and brother, Richard Trujillo, while incarcerated at the Santa Fe County Jail, deprived them of their constitutional right of familial association." *Id.* at 1187. In analyzing the asserted right of familial association, we focused mainly on the question of whether the right existed beyond the context of a parent/child relationship, and our reasoning and conclusions were as follows:

-12-

Many courts have recognized liberty interests in familial relationships other than strictly parental ones. *See, e.g., Moore v. City of East Cleveland*, 431 U.S. 494 . . . (1977) (plurality opinion) (zoning ordinance could not prohibit grandmother from living with her grandsons who were cousins); *Smith v. Organization of Foster Families*, 431 U.S. 816 . . . (1977) (foster parents have liberty interest in relationship with foster children) (dicta); *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir. 1984) (interference with dating relationship actionable under § 1983); *Rivera v. Marcus*, 696 F.2d 1016, 1024-25 (2d Cir. 1982) (half-sister who was also foster mother had protected interest in siblings); *Drollinger v. Milligan*, 552 F.2d 1220, 1226-27 (7th Cir. 1977) (deprivation of grandfather's relationship with grandchild actionable under § 1983). . . .

    . . . .

Although the parental relationship may warrant the greatest degree of protection and require the state to demonstrate a more compelling interest to justify an intrusion on that relationship, we cannot agree that other intimate relationships are unprotected and consequently excluded from the remedy established by section 1983. We therefore hold that Rose and Patricia Trujillo had constitutionally protected interests in their relationship with their son and brother, Richard Trujillo.

*Trujillo*, 768 F.2d at 1188-89 (footnote omitted).

Importantly, we also noted "that the familial relationships in [*Trujillo*] do not form the outer limits of protected intimate relationships. . . . '[A] broad range of human relationships . . . may make greater or lessor claims to constitutional protection.'" *Id.* at 1189 n.5 (quoting *Jaycees*, 104 S. Ct. at 3251). In fact, we specifically rejected the position taken by the Seventh Circuit in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), *overruled by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005), that "a deliberate deprivation of any intimate associational

-13-

relationship other than that of a parent, spouse, or child would not be actionable under section 1983." *Trujillo*, 768 F.2d at 1190. As we explained:

> We believe that this [position] is irreconcilable with the analysis of intimate associational rights in *Jaycees*. The Court recognized there that these rights extend to intimacy in a variety of contexts. Section 1983 accordingly provides a remedy for improperly motivated state conduct in all of these contexts.

*Id.*

*Trujillo* also placed an important limitation on the right of familial association, however, because "we conclude[d] that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." *Id.* This limitation was fatal to the plaintiffs' claims in *Trujillo*, because "the Trujillos' complaint [did] not allege intent on the part of defendants to deprive them of their protected relationship with their son and brother." *Id.* As a result, we held that "their complaint was properly dismissed for failure to state a constitutional claim." *Id.*

Finally, even if a plaintiff asserts a cognizable right of familial association in a given case, the determination of whether the plaintiff's rights were violated "requires a balancing of liberty interests against the relevant state interests." *Griffin*, 983 F.2d at 1547 (brackets and internal quotation marks omitted). Specifically, "[w]e weigh these interests to determine whether [the state actor's] conduct . . . constituted an undue burden on [the plaintiff's] associational rights." *Id.*; *see also id.* ("To determine whether a person's familial association rights

have been violated . . ., we must weigh two factors: the state's interests in investigating reports of child abuse, . . . and [the person's] interests in [his or her] familial right of association."); *Trujillo*, 768 F.2d at 1190 (noting that the freedom of intimate association "protect[s] interpersonal relationships from *unwarranted* intrusion by the state") (emphasis added).

**E. Analysis of the District Court's Decision.**

In its cogent and well-reasoned order, the district court found that Suasnavas, the Luethjes, and Burris alleged sufficient facts in support of their claims to overcome defendants' qualified immunity defense. The court summarized its reasoning as follows:

> Unquestionably there is a constitutional right to custody of one's children. *See Stanley [v. Illinois]*, 405 U.S. [645, 652 (1972)]. Parents have a due process right to a hearing before their parental rights are terminated. *Santosky v. Kramer*, 455 U.S. 745 (1982). Moreover, as previously discussed, there is a clearly established right to familial association. *Trujillo*, 768 F.2d at 1188-89. These rights have been clearly established in the Tenth Circuit for many years. On the face of their Complaint, Plaintiffs have alleged violations of clearly established federal constitutional rights by DHS Defendants.

Aplts. App. at 107.

Confining our review to the allegations set forth in plaintiffs' complaint, and accepting all well-pleaded allegations as true, we agree with the district court that defendants are not entitled to a Rule 12(b)(6) dismissal of plaintiffs' complaint based on their qualified immunity defense. First, as the district court recognized, "parents have a protected liberty interest in the care, custody and

control of their children," *Gomes*, 451 F.3d at 1127, and "[t]hat interest is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court," *id.* (brackets and internal quotation marks omitted). Accordingly, we agree with the district court that Suasnavas has stated a claim for relief under the Due Process Clause of the Fourteenth Amendment, as she has alleged that: (1) defendants constructively terminated her clearly established parental rights with regard to Phillips without a hearing and without proper justification; and (2) defendants acted with the intent to interfere with her relationship with Phillips. *See* Aplts. App. at 17-20. That said, we also note that defendants have alleged in their opening brief that "the movement of [Phillips] to Florida to an approved [Interstate Compact for the Placement of Children] home was properly authorized by an Oklahoma state court after a hearing on the constitutional objection filed by Plaintiffs-Appellees." Aplts. Opening Br. at 8. Defendants have offered no evidence to support this allegation, however, and it is beyond the scope of our limited appellate review under Rule 12(b)(6).

Second, we also agree with the district court that Burris has alleged sufficient facts to support her claim that defendants have intentionally interfered with her clearly established right to associate with her parents. Although defendants argue in their opening brief that any threats made regarding the removal of Burris's children from her custody "are not compensable under 42 U.S.C. § 1983," Aplts. Opening Br. at 13, the Eighth Circuit case that

defendants cite to support this argument actually supports Burris's position, as Burris has unequivocally alleged that defendants' threats have "deprived her . . . of the association and companionship of her parents," Aplts. App. at 21; *see also* Aplts. Opening Br. at 13 (quoting *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("[A] threat constitutes an actionable constitutional violation . . . if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right.")).  As with Suasnavas's claims, however, we want to emphasize that a developed factual record may or may not support Burris's claims, and we are only determining the sufficiency of the allegations in plaintiffs' complaint.

Lastly, we also agree with the district court that the Luethjes have alleged sufficient facts to show a violation of a clearly established constitutional right. Although *Trujillo* did not explicitly recognize a right of familial association between grandparents and grandchildren, we made it clear in *Trujillo* that the right of familial association extends beyond the context of "parent, spouse, or child," *Trujillo*, 768 F.2d at 1190, and we cited specific legal authority recognizing the importance of the familial relationship between grandparents and grandchildren, *id.* at 1188 (citing *Moore v. City of East Cleveland*, 431 U.S. 494 (1977) (plurality opinion) (zoning ordinance could not prohibit grandmother from living with her grandsons who were cousins)), and *Drollinger v. Milligan*, 552 F.2d 1220, 1226-27 (7th Cir. 1977) (deprivation of grandfather's relationship

with grandchild actionable under § 1983)). In addition, *Trujillo* clearly recognized the paramount importance of the parent/child relationship, even if the child is an adult. We therefore believe that *Trujillo* gave defendants "fair warning that their [alleged] conduct was unconstitutional." *Gomes*, 451 F.3d at 1136.

Again, however, we want to stress that a developed factual record may or may not support the Luethjes' claim that defendants' conduct resulted in an intentional and unwarranted intrusion on their right to associate with their children and grandchildren. In particular, the factual question of whether defendants had a reasonable suspicion that Arnold Luethje posed a threat to his grandchildren must be explored in depth, *cf. Gomes*, 451 F.3d at 1130 (concluding "that state officials may remove a child from the home without prior notice and a hearing when they have a reasonable suspicion of an immediate threat to the safety of the child"), as the merits of all of the claims in this case would appear to be inextricably tied to that question. Likewise, we cannot determine from the face of plaintiffs' complaint whether any "extraordinary circumstances" justified defendants' actions in this case. *Id*. at 1134. Finally, neither the parties nor the district court have addressed the question of whether Arnold Luethje's status as a "step" parent and grandparent limits his right of familial association in any way, and we leave that question open for the district court to address in subsequent proceedings.

The district court's denial of defendants' qualified immunity defense under Fed. R. Civ. P. 12(b)(6) is AFFIRMED.  The portions of this appeal pertaining to the district court's rulings regarding defendants' *Rooker-Feldman* and collateral estoppel defenses are DISMISSED for lack of appellate jurisdiction.

Entered for the Court


John L. Kane
District Judge