Connie ROSKA, James Roska, Rusty Roska, Jessica Roska, Maria Stewart, Plaintiffs,

v.

Melinda SNEDDON, Shirley Morrison, Colleen Lasater, Defendants.

No. 1:99 CV 112 DAK.

United States District Court,
D. Utah,
Northern Division.

March 26, 2004.

Gregory Brent Smith, Esq., Affordable Legal Advocates, Salt Lake City, UT, for Plaintiffs.

Peggy E. Stone, Esq., Peter L. Rognlie, Esq., Utah Attorney General's Office, Litigation Unit, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Plaintiffs Connie Roska, James Roska, Rusty Roska, Jessica Roska, and Maria Stewart's Motion for Summary Judgment, Defendants Melinda Sneddon, Shirley Morrison, and Colleen Lasater's Motion for Summary Judgment, and Defendants' Motion to Strike Audio Tape Attachment to Plaintiffs' Motion to Alter or Amend Judgment and All Factual Statements Based on the Audio Tape. The court held a hearing on

the motions on March 18, 2004. Plaintiffs were represented by Steven C. Russell, and Defendants were represented by Peggy E. Stone. Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the facts and law relevant to this motion, the court enters the following Order.

## BACKGROUND

### I. Factual Background

On May 28, 1999, Defendants Sneddon and Morrison, who are DCFS caseworkers, accompanied by a police officer, removed Rusty Roska, a then-twelve-year-old boy, from his family's custody without notice or a pre-deprivation hearing. On June 3, 1999, a shelter hearing was conducted pursuant to the requirements of Utah removal statutes. The judge at the shelter hearing determined that the removal was proper. However, the next day, at a further proceeding in the case, the judge ordered Rusty to be returned to his parents' custody with significant intervention and oversight by DCFS.

Rusty suffered from what appears to be unknown ailments. His mother made several comments to school workers and doctors that caused concern, including statements that Rusty had a hole in his esophagus, that Rusty had deadly parasites, and that Rusty suffered from a rare disease that only few people in the world had. School workers also provided Defendant Morrison with documents that Rusty's parents had his appendix removed for no reason and that it was suspected that his mother suffered from Munchausen Syndrome by Proxy ("MSP"). The case workers apparently relied on several of these comments in making their decision to remove Rusty from his parents' custody.

The case workers also contacted Rusty's treating physicians. Two of the doctors, who had previously treated Rusty at the UCLA Pain Clinic, expressed to Morrison that Rusty's parents had not fully complied with treatment regimens. However, Rusty's main treating physician was opposed to Rusty being taken from his parent's custody and stated that it would be more harmful to Rusty than leaving him in his parent's custody.

The caseworkers, Sneddon and Morrison, contacted their supervisor, Colleen Lasater, and asked for her advice. Despite the treating physician's statements, Lasater supported Sneddon and Morrison's decision to remove Rusty from his home.

The caseworkers met with an attorney in the Child Protection Division of the Attorney General's office, Craig Peterson. Peterson testifies that he told them that, based on the child removal statutes, removal would be proper and that a pre-deprivation hearing, notice, and warrant were not necessary. However, the caseworkers spoke to Peterson before they spoke to Rusty's treating physician. Therefore, Peterson did not know that Rusty's treating physician was opposed to Rusty's removal when he gave his advice.

At the time the caseworkers determined to remove Rusty from his parents' custody, he was wheelchair bound and being fed through a tube. The school workers reported that he looked worse every day and were concerned that he might die without DCFS intervention. However, Morrison stated in her deposition that at the time the decision was made to remove Rusty from his parents' custody, she did not believe that Rusty was in imminent danger of death.

### II. Procedural Background

This case is a civil rights action brought by Rusty Roska, his parents, and his siblings. The case is on remand from the Tenth Circuit. *See Roska v. Peterson,* 328

F.3d 1230 (10th Cir.2003). Judge Benson initially granted qualified immunity to all of the state defendants and dismissed the case. The Tenth Circuit reversed one portion of the case and remanded the issue. The Tenth Circuit found that the Plaintiffs stated a claim for a deprivation of a liberty interest in their family relationship when Rusty was taken from their custody without a warrant or pre-deprivation hearing and that such a right was clearly established. The only issue remaining is the third prong in the qualified immunity analysis—whether the state actors acted objectively reasonable in light of the legal rules that were clearly established at the time the actions were taken.

Since this case has been remanded, this court determined that the attorney was entitled to absolute immunity. Therefore, the only remaining defendants are the case workers, Sneddon and Morrison, and their supervisor, Lasater.

## DISCUSSION

### Cross Motions For Summary Judgment

The parties have filed cross motions for summary judgment. Defendants' motion for summary judgment seeks judgment on qualified immunity, seeks to dismiss the claims of the children for lack of standing, and seeks to dismiss plaintiffs' claim for punitive damages. Plaintiffs' motion for summary judgment is limited to the issue of qualified immunity.

### I. Qualified Immunity

This court must determine whether Defendants' reliance on Utah Code Annotated Sections 62A–4a–202.1 and 62A–4a–202.2 and reliance on the advise of counsel rendered Defendants' actions objectively reasonable in order for them to be entitled to qualified immunity. Both sides have moved for summary judgment on these issues. The Tenth Circuit's discussion of

the remaining issues in this case obviously frames this court's analysis on remand.

■■■ The Tenth Circuit noted that in considering whether the defendants actions were consistent with the "reasonable state actor," this court "must keep in mind that qualified immunity precludes the imposition of liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *Roska*, 328 F.3d at 1251 (citations omitted). At the same time, however, "where the right is clearly established, a defendant should only 'rarely' be able to succeed with a qualified immunity defense." *Id.* "'The circumstances must be such that the defendant was so prevented from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right.'" *Id.* (citations omitted).

■■■ "The objective reasonableness of the officer's actions is a legal question." *Id.* In this case, there are not any historical facts material to this issue that are in dispute.

### A. Reliance on Statute

■■■ "In considering the 'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question." *Id.* However, "an officer's reliance on an authorizing statute does not render the conduct per se reasonable." *Id.* at 1252. "'[T]he existence of a statute is a factor militating in favor of the conclusion that a reasonable official would find that conduct constitutional.'" *Id.* (citations omitted).

Although the Tenth Circuit determined that Section 78–3a–301 does not authorize removal absent pre-deprivation procedures and reliance on section 78–3a–301 alone could not render the Defendants' conduct

objectively reasonable, it remanded the case for this court to determine whether Utah Code Annotated Section 62A–4a–202.1 and 62A–4a–202.2 rendered Defendants' conduct objectively reasonable. *Id.* The Tenth Circuit did not consider these statutes because the district court did not rely on them in finding qualified immunity and it was impossible on the record before it. *Id.* The Tenth Circuit stated: "We leave it to the district court on remand to consider whether defendants in fact relied on Utah Code Sections 62A–4a–202.1 and 202.2 (as opposed to section 78–3a–301), and whether defendants complied with the statutory provisions (recognizing that the district court's findings under section 78–3a–301 likely address this question, at least in part)." *Id.* at 1253 n. 31.

> The Tenth Circuit stated that
>
> in considering the relevance of a statute under a qualified-immunity analysis, the appropriate inquiry is not whether a reasonable state officer could have concluded that the statute authorized the unconstitutional conduct in question. Rather, a court must consider whether reliance on the statute rendered the officer's conduct 'objectively reasonable,' considering such factors as: (1) the degree of specificity with which the statute authorized the conduct in question; (2) whether the officer in fact complied with the statute; (3) whether the statute has fallen into desuetude; and (4) whether the officer could have reasonably concluded that the statute was constitutional.

*Id.* at 1253.

The parties agree that the statute has not fallen into desuetude. Therefore, the court need only determine whether Defendants in fact relied upon Sections 62A–4a–202.1 and 202.2, whether the statutes specifically authorized removal without a warrant or pre-deprivation hearing, whether Defendants complied with the statute, and

whether Defendants could have reasonably concluded the statute was constitutional.

### 1. *Reliance in Fact*

 Plaintiffs assert that the record is void of any reliance by Defendants on Sections 62A–4a–202.1 and 202.2. Plaintiffs contend that nothing in the record suggests that the Defendants ever actually discussed or relied upon Sections 62A–4a–202.1 and 202.2 and the statutes were not mentioned in Defendants' initial appellate brief.

However, the record is not void of evidence that the Defendants relied on the statutes. DCFS policy is based upon those statutes. Whether the caseworkers realized that the policy was based on a particular statute is not necessarily required for a finding that the statutes were in fact relied upon in making the determination to place Rusty in protective custody. The evidence demonstrates that the caseworkers were aware of DCFS policy and were considering the policy in making their determinations. Also, Peterson gave the caseworkers advice based on the whole statutory scheme. His declaration states that his advice was based on a two-fold analysis of Section 78–3a–301 and Section 62A–4a–202.1. Also, at the time of the shelter hearing, the juvenile court determined that the requirements of Section 62A–4a–202.1 were satisfied. DCFS initially made a sufficient showing under these statutes at the shelter hearing.

In addition, Defendants raised Utah Code Annotated Sections 62A–4a–202.1, 62A–4a–202.2, and 78–3a–301 in their Memorandum in Support of Motion for Summary Judgment filed before Judge Benson. Because the first element required by Section 62A–4a–202.1 is that a caseworker have substantial cause to believe that any of the factors listed in Section 78–3a–301 exist, the focus became

Section 78–3a–301. However, such focus was merely a part of determining whether Section 62A–4a–202.1 had been satisfied. It was not until the Tenth Circuit released its first decision stating that Section 78–3a–301 was not sufficient that a more specific discussion of the other statutes became necessary. It was at that time that the State sought a rehearing with respect to the other statutes, the Tenth Circuit granted the rehearing, and remanded the case to the district court. All of these factors combined demonstrate that Section 62A–4a–202.1 was in fact relied on and can be the basis for determining whether qualified immunity applies in the present case.

### 2. Authorization of Statute

■ Even if the Defendants relied on Sections 62A–4a–202.1 and 202.2, Plaintiffs contend that neither they nor Section 78–3a–301 authorize the seizure of children without notice and an opportunity to be heard. Plaintiffs argue that the statutes do not specifically authorize the removal of children absent pre-deprivation procedures and, therefore, should be read to require a pre-deprivation notice and hearing. Defendants assert that Plaintiffs' arguments ignore fundamental rules of statutory construction and fail to consider the statutory scheme as a whole.

Reading the statute as a part of the entire statutory scheme, as the court is required to do, it is reasonable to interpret Section 62A–4a–202.1 as allowing a case worker to take a child into protective custody without a warrant if: 1) the worker had substantial cause to believe that any of the factors listed in Section 78–3a–301 existed; 2) no other services were reasonably available that would eliminate the need for removal; and 3) the worker was accompanied by a police officer. Section 62A–4a–202.2 provided for post-removal notice of procedural rights to the parents and a hearing when a child is placed in protective custody without a warrant. When the

circumstances that allowed placement of a child into protective custody without a warrant were not present, the child's parents were entitled to notice and a hearing before removal under Sections 78–3a–305(1) and (2). Therefore, the statutes, when read together, appear to create two paths available to DCFS depending on the circumstances. To find otherwise would make portions of the act inconsistent, inoperative, or superfluous.

### 3. Compliance

■ Because the statute could reasonably be interpreted to allow removal without notice or a pre-deprivation hearing in certain limited situations, the court must also determine whether Defendants complied with Section 62A–4a–202.1. Removal pursuant to Section 62A–4a–202.1 required that three conditions be met: (1) the services caseworker must have substantial cause to believe that any of the factors described in Section 78–3a–301 exist; (2) there are no other services reasonably available, which, if provided to the minor's parents or to the minor, would eliminate the need to remove the minor from the custody of his parent; and (3) the services caseworker must be accompanied by a peace officer, unless one is not reasonably available.

Plaintiffs argue that Defendants did not comply with the statutes because they require a finding of immediate harm before acting and there was no evidence of immediate harm, they require the use of the least intrusive means available to protect a child and Defendants used the most intrusive means and failed to provide less intrusive services. Defendants argue that they complied with the statutes and were not required under the facts of this case to provide the least intrusive means available.

Defendants contend that the statute requires in-home services only if "the divi-

sion determines that it is possible and appropriate." The court agrees that a determination of whether services would be reasonable and appropriate did not require DCFS to provide Plaintiffs with their choice of services. However, the facts relied on by DCFS to determine that no in-home services were possible or appropriate in this case are merely vague references to a lack of cooperation and a concern that Rusty's parents may have been connected to what was making him sick. There is no evidence in the record that Defendants even considered any in-home services or other alternatives to removal. However, Rusty's treating physician at the time told the caseworkers that he was opposed to removing Rusty from his home and that removal would cause more harm to Rusty than leaving him in his parents' custody. This opinion undermines any finding that in-home services were futile and convinces this court that Defendants abused the discretion granted them under the statute to determine the provision of in-home services. Defendants disregard for in-home services, especially after receiving the treating physician's opinion, was objectively unreasonable as a matter of law.

Defendants also argue that the juvenile judge at the shelter hearing determined that they had complied with the statute. However, this argument is belied by the fact that the next day, after further hearings, the court returned Rusty to his parents' custody.

■ Furthermore, Defendants argue the Lasater is entitled to qualified immunity because her role in this situation was limited to supervising Morrison and Sneddon. However, the court concludes that Lasater's approval of removing Rusty from his parents' custody, with the knowledge that the treating physician was opposed to such removal and without the provision of in-home services, was also ob-

jectively unreasonable noncompliance with the governing statutes.

### 4. Constitutionality

■ Finally, the court must determine whether Defendants could have reasonably concluded that the statute was constitutional. Plaintiffs argue that even if the statutes did authorize removal without notice and a hearing, given the clearly established law that parents are entitled to pre-deprivation notice and hearing, Defendants could not have concluded that the statutes or their conduct were constitutional.

Defendants assert that they reasonably believed that the statutes were constitutional because the child protection scheme in place at the time of Rusty's removal was enacted in response to a still-pending federal civil rights lawsuit against DCFS and the constitutionality of the statutes had not been challenged. Although the court agrees that the Defendants could have reasonably concluded that the statutes were facially constitutional at the time of their actions, Defendants could not have reasonably concluded that their interpretation of the statute and application of the statute in this case was constitutional.

Sections 62A–4a–202.1 and 78–3a–301 did not prevent Defendants from knowing that their interpretation of the statutes would have been unreasonable and unconstitutional. The statutes recognize the constitutional nature of parental rights and gave Defendants fair warning that such rights must be balanced with the child's rights. Defendants did not comply with the statutes and a reasonable caseworker would have known that such noncompliance was unconstitutional.

Therefore, the court concludes that although the Defendants may have relied on the statutes insofar as they were the basis for DCFS policy and those statutes allowed for removal without pre-deprivation

due process procedures in certain circumstances, the statute did not allow for removal under the facts of this case and a reasonable state official would have concluded that her actions were unconstitutional. Accordingly, the court concludes that Defendants' reliance on the statutes does not entitle them to qualified immunity.

### B. Reliance on Advice of Counsel

Additionally, the court must consider on remand whether Defendants reasonably relied on the advice of counsel. The Tenth Circuit recognized that " 'reliance on the advice of counsel in certain circumstances [can] rise[ ] to the level of extraordinary circumstances' sufficient to justify a grant of qualified immunity." *Roska*, 328 F.3d at 1253 (citations omitted). The Tenth Circuit reversed and remanded this issue because the district court "based its decision on Utah Code Section 78–3a–301"only, and, based on the record before it, the Tenth Circuit could not "determine whether the district court was correct in concluding that Peterson's advise related specifically to the conduct in question: removing Rusty from his home without any pre-deprivation procedures." *Id.* at 1254. "Although the district court found that the advice 'was specifically tailored to the facts giving rise to the controversy,' neither the district court's opinion nor the record indicate the specific facts upon which Peterson relied in approving removal." *Id.* The court stated that although the defendants claim that Peterson's advice was also based on Sections 62A–4a–202.1 and 202.2, the Tenth Circuit determined that it was "best to allow the district court to consider this question in the first instance." *Id.*

Accordingly, the court is left to decide whether the defendants acted objectively reasonable in light of the advice they received from state attorney Peterson. Plaintiffs argue that reliance on the advice of Peterson does not shield Defendants

from liability. Plaintiffs contend that when the statutes upon which Peterson is opining are insufficient to provide a shield from immunity, his advice also fails. Plaintiffs further argue that even if the statutes were specific and Defendants complied with the statutes and acted reasonably, Peterson's advice fails to satisfy the extraordinary circumstances test.

In *V–1 Oil*, the Tenth Circuit listed relevant factors to consider in determining whether the advice of counsel rose to the level of extraordinary circumstances sufficient to justify a grant of qualified immunity. *V–1 Oil Co. v. Wyoming Department of Environ. Quality*, 902 F.2d 1482, 1488 (10th Cir.1990). The relevant factors include: (1) how unequivocal and specific the advice was; (2) how complete the information provided to the attorney giving the advice was; (3) the prominence and competence of the attorney; and (4) the time between the dispersal of the advice and the action taken. *Id.*

■■■ Peterson's advice was based on Section 62A–4a–202.1 and 78–3a–301 and he advised the caseworkers that they had sufficient grounds to place Rusty into custody without a warrant and with post-placement procedures if they believed it was prudent and necessary for the health, safety and welfare of Rusty. However, it is undisputed that Peterson was not given all the information because he did not know of Dr. Gooch's opposition to the removal. Defendants spoke to Dr. Gooch after they spoke with Peterson. Therefore, material events happened between the advice and Rusty's removal that may have influenced Peterson's advice regarding the decision to place Rusty in protective custody.

In *V–1 Oil*, the court granted the state officer qualified immunity because the officer's reliance on advice of counsel "prevented [him] . . . from knowing the rele-

vant legal standard," even though the relevant principle was "clearly established." *Id.* at 1488–89. In contrast, in the present case, Peterson's advice was that Rusty could be removed without notice and a pre-deprivation hearing if the caseworkers believed it was prudent and necessary for the health, safety and welfare of Rusty. Peterson's advice did not prevent Defendants from knowing the relevant legal standard. Therefore, the court concludes that Peterson's advice does not constitute extraordinary circumstances and does not entitle Defendants to qualified immunity.

## II. Standing of Children

██ Defendants argue that the children named as plaintiffs in this action-Rusty Roska, Jessica Roska, and Maria Stewart-lack Article III standing to make a claim under Count 5 of the Amended Complaint because the Fourteenth Amendment liberty interest in the care and custody of children belongs only to the parents, not children. Therefore, Defendants assert that the court lacks subject matter jurisdiction over the children's claims and their claims should be dismissed.

The cases cited by Defendants speak only of a parent's right to familial association. However, they do not expressly limit such rights to only parents. Nonetheless, both parties agree that they can find no case law recognizing a child's liberty interest in familial association. Therefore, even if this court were to hold that the children have liberty interests in their familial associations, that right would not have been clearly established at the time of the conduct in question. Accordingly, Defendants are entitled to qualified immunity from liability to the children.

## III. Punitive Damages

██ Defendants next argue that there is no evidentiary basis to support an award of punitive damages. Plaintiffs seek $15 million in punitive damages on the remaining claim in this case. Punitive damages " 'are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir.2003) (citations omitted). "The focus must be on whether the defendant's actions call for " 'deterrence and punishment over and above that provided by compensatory awards.' " " *Id.* (citations omitted). The sufficiency of the evidence is at first a legal question. *Id.* at 1307.

Defendants contend that punitive damages are not necessary as a deterrence in this case. The statutory mechanism for placing a child in protective custody has been amended by the Utah Legislature since the actions in this case occurred. In 2001, the Utah Legislature amended Section 62A–4a–202.1 to require a warrant for the first time. The 2003 version provides that a "state officer, peace officer, or child welfare worker may not, without the consent of the minor's parent or guardian, a warrant, or a court order issued under Section 78–3a–106 remove a minor from the minor's home or school, or take a minor into protective custody unless there exists exigent circumstances." The future conduct of Defendants is now guided by substantially different statutory provisions and an award of punitive damages is not necessary to deter future, allegedly, unconstitutional conduct.

Defendants further contend that there is insufficient evidence, as a matter of law, to demonstrate that they had the requisite culpable mental state required for punitive damages. The Tenth Circuit noted that "the defendant's motive to protect the child ... does not vitiate plaintiffs' [constitutional] rights. That motive, however,

may enter the calculus of the [compensatory] damages, if any, that his actions justify." *Roska*, 328 F.3d at 1255.

█ The record shows that Defendants believed that placing Rusty in protective custody was necessary to protect his health, safety, and welfare. Although there was undoubtedly a concern for Rusty's health, there is at least some question as to whether the rights of Rusty's parents were recklessly or callously disregarded. This court has found that Defendants failed to comply with the mandates of Section 64A–4a–202.1 by failing to use the least intrusive methods available. Defendants' decision to remove Rusty from his parents' custody against the advice of his treating physician and before providing in-home services not only failed to comply with the statute but also evidences a potential reckless and callous disregard for the parents' liberty interest in familial association. Therefore, the court concludes that there is enough evidence for the issue of punitive damages to go to a jury.

### Defendants' Motion To Strike

Defendants argue that the audio tape submitted with Plaintiffs' Rule 59(e) Motion to Reconsider should be stricken from the record. The audio tape is a conversation between Plaintiffs' attorney and Defendant Morrison. Judge Benson determined that the tape did not constitute new evidence and did not rely on it for reconsideration. However, Plaintiffs now submit descriptions of what is allegedly said on the tape in support of their motion for summary judgment.

As an initial matter, Plaintiffs contend that Defendants have waived any objection to the tape because it has been in the record for over three years. Defendants argue that they have not waived their objection to the tape because it was not considered for the Rule 59(e) motion in front of Judge Benson and they objected to the use of its contents in the motion for summary judgment as soon as it was used. The court agrees with Defendants that their objection is not untimely.

█ Defendants assert that Plaintiffs have not authenticated or laid any foundation for the tape or their assertions of the tape's contents. Plaintiffs contend that counsel's submission alone is enough because of the duties attorneys have under Rule 11 of the Federal Rules of Civil Procedure and as officers of the court. However, Rule 11 and an attorney's oath have not replaced the evidentiary requirements for admissible evidence. Attachments to memoranda must be admissible before the court can consider them. *See Johnson v. Chilcott,* 658 F.Supp. 1213, 1221–22 (D.Colo.1987). Plaintiffs have made no attempt to properly authenticate or lay a foundation for the alleged statements. Therefore, the court cannot consider this evidence for purposes of the present motions. Accordingly, the court grants Defendants' Motion to Strike.

### CONCLUSION

Based on the above reasoning, Plaintiffs' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as set forth above. Defendants are not entitled to qualified immunity as to the parents', Connie and James Roska, claims. However, Defendants are entitled to qualified immunity with respect to the children's claims. In addition, there is sufficient evidence for the issue of punitive damages to go to a jury. Defendants' Motion to Strike is GRANTED for purposes of the present motions.