**UNITED STATES COURT OF APPEALS**

**February 23, 2010**

**TENTH CIRCUIT**

| | |
|---|---|
| CONNIE ROSKA; JAMES ROSKA, on behalf of minor children Rusty and Jessica Roska, and Maria Stewart, | No. 07-4170 (D. Utah) (D.C. No. 2:99-CV-112-DAK) |
| Plaintiffs - Appellants/Cross-Appellees, | |
| v. | |
| MELINDA SNEDDON; SHIRLEY MORRISON; COLLEEN LASATER, | |
| Defendants - Appellees/Cross-Appellants. | |

| | |
|---|---|
| CONNIE ROSKA, on behalf of minor children Rusty and Jessica Roska, and Maria Stewart; JAMES ROSKA, on behalf of minor children Rusty and Jessica Roska, and Maria Stewart, | |
| Plaintiffs – Appellants/Cross-Appellees, | 07-4288 |
| v. | |
| MELINDA SNEDDON; SHIRLEY MORRISON; COLLEEN LASATER; CRAIG T. PETERSON; DAN CHOATE; DARLA RAMPTON, | |
| Defendants – Appellees/Cross-Appellants. | |

**ORDER AND JUDGMENT**[1]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and the appellate record, this panel concludes that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is submitted for decision without oral argument.

This case is burdened with an extensive procedural history. The Roska family[2] (the Roskas) brought suit against various social workers from the Utah Division of Child and Family Services (Social Workers) pursuant to 42 U.S.C. § 1983 based on the removal of twelve-year-old Rusty Roska from the family home. Numerous district court hearings and several appeals culminated in a trial to determine the parents' damages on their procedural due process claims. At issue here is whether the Roskas waived their substantive due process claims and the Roskas children's procedural due process claims in their first appeal. They also challenge the validity of the Social Workers' offer of judgment. We affirm.

---

[1] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

[2] The plaintiffs are parents Connie and James Roska and their children, Rusty Roska, Jessica Roska, and Maria Stewart.

# I. BACKGROUND

The Roskas initiated their suit over ten years ago in October 1999. A detailed rendition of the facts are found in *Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) (*Roska I*), and *Roska v. Sneddon*, 437 F.3d 964 (10th Cir. 2006) (*Roska II*). Suffice it to say the Roskas claimed the Social Workers violated numerous constitutional rights when they removed Rusty from the family home without providing notice or a pre-removal hearing.

The Social Workers submitted their first offer of judgment on June 26, 2000. It stated in relevant part:

> Pursuant to Rule 68(b) of the Federal Rules of Civil Procedure, defendants, offer judgment to be taken against them jointly by plaintiffs in the amount of Five Thousand and no/100 Dollars ($5,000) and offer judgment to be taken against them jointly for an additional sum for accrued costs and reasonable attorney fees recoverable under 42 U.S.C. § 1988, to be determined by the Court. This offer is made in consideration for a dismissal of the above captioned lawsuit.

(Appellants' Appx. at 203.) They made similar offers in March 2006 for $100,000 and May 2006 for $200,000.

In February 2001, the district court granted summary judgment to the Social Workers on all claims, concluding they were entitled to qualified immunity. The Roskas appealed. We affirmed the dismissal of a majority of the claims but held the "plaintiffs . . . sufficiently alleged a violation of their Fourteenth Amendment procedural due process rights" and "clearly established law plainly put defendants on notice that their conduct violated the Constitution." *Roska I*, 328 F.3d at 1246, 1250. We based our holding on *Malik v. Arapahoe County Dep't. of Social Servs.,* 191 F.3d 1306, 1315 (10th Cir. 1999)

("[I]t [is] clearly established law that, except in extraordinary circumstances, *a parent* has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." (emphasis added)). We remanded the case to the district court, however, to consider an additional issue—whether the Social Workers' reliance on certain Utah statutes or the advice of counsel rendered their actions objectively reasonable and thus entitled them to qualified immunity. *Id.* at 1252-53.

On remand, the parties filed cross-motions for summary judgment. The district court held neither the Social Workers' reliance on the Utah statutes nor their reliance on the advice of counsel rendered their conduct objectively reasonable and therefore, they were not entitled to qualified immunity on the parents' claims. *Roska v. Sneddon*, 311 F. Supp. 2d 1307, 1316-17 (D. Utah 2004). However, it held they were entitled to qualified immunity on the children's claims because "even if . . . children have liberty interests in their familial associations, that right would not have been clearly established at the time of the conduct in question. Accordingly, [the Social Workers] are entitled to qualified immunity from liability to the children." *Id.* at 1317. All parties appealed. On May 13, 2005, we dismissed the children's appeal for lack of a final order. On February 9, 2006, we affirmed the denial of qualified immunity to the Social Workers on the parents' claims. *See Roska II*, 437 F.3d at 967.

The case again returned to the district court for a trial to determine damages. Prior to trial, the parties disputed which theories of liability remained and which damages could be assessed. The court rejected the Roskas' contention that all plaintiffs had preserved both their substantive and procedural due process claims for trial. It

- 4 -

determined only the parents' procedural due process claims had survived the appeal in *Roska I*. *Roska v. Sneddon*, No. 1:99CV112DAK, 2007 WL 1557418, at \*2 (D. Utah May 25, 2007).

At the completion of the trial, the jury found the parents had suffered no actual damages and awarded them a total of $2.00 in nominal damages. The Roskas moved for costs and attorney's fees as the prevailing party under 42 U.S.C. § 1988(b). The district court granted the motion but determined the June 25, 2000 offer of judgment cut off their entitlement to fees and costs as of that date. It also determined the Roskas should reimburse the Social Workers for the costs they incurred after June 25, 2000, based on the offer of judgment on that date. *Roska v. Sneddon*, No. 1:99CV112DAK, 2007 WL 4165750, at \*4 (D. Utah Nov. 20, 2007).

On appeal, the Roskas raise three issues: (1) their substantive due process claims were not waived in *Roska I*, (2) the district court erred in dismissing the children's procedural due process claims on the basis of qualified immunity because the children's protected interest was clearly established at the time of the constitutional violation, and (3) the Social Workers' June 25, 2000 offer of judgment was insufficient to limit their award of attorney's fees and costs and to require them to pay the Social Workers' costs after that date.

## II.     DISCUSSION

A.     Preservation of Claims

Claims not briefed and argued on appeal are waived. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening

brief are deemed abandoned or waived."). In *Roska I*, we considered the district court's

dismissal of all of the Roskas' claims. Therefore, the only claims which remained were

those the Roskas presented and argued on appeal in *Roska I*.

On appeal in *Roska I*, the Roskas' argument in support of their due process claims

is repeated here in its entirety:

> II. THE LAW RESPECTING PLAINTIFFS' FOURTEENTH AMENDMENT RIGHT TO FAMILIAL ASSOCIATION AND PRIVACY WAS CLEARLY ESTABLISHED ON MAY 29TH, 1999, SUCH THAT DEFENDANTS MORRISON, SNEDDON, PETERSON AND LASATER SHOULD HAVE KNOWN THAT PREDEPRIVATION PROCEDURES, OR EXTRAORDINARY CIRCUMSTANCES, WERE REQUIRED PRIOR TO REMOVING PLAINTIFF RUSTY ROSKA FROM HIS HOME AND FROM THE CUSTODY OF HIS PARENTS.
>
> According to the Court, Plaintiffs' Fourteenth Amendment claim for violation of familial association and privacy depend upon establishing a Fourth Amendment violation. And since the Court concluded that Defendants relied upon the state statute, the Court dismissed the Plaintiffs' claims. However, the Fourteenth amendment claim was well established on the date of the seizure, and is a separate claim from the Fourth Amendment.
>
> In *Malik*, the mother of a child who had been taken by state officials sued under § 1983 for, among other things, violation of her Fourteenth Amendment liberty interest in familial association and privacy. The defendants moved for summary judgment, and the trial court denied the motion. This Court held that the Fourteenth Amendment's liberty interest in familial association was: "clearly established law that, except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." *Malik*, 191 F.3d at 1315. In the case of Rusty Roska, there were no pre-deprivation procedures; Defendants didn't even bother to get an ex parte order. Nor were there any "extraordinary circumstances." Defendants violated Plaintiffs' right to familial association, and the District Court dismissal of this claim should be reversed.

(Appellees' Supp. Appx. at 492-93 (record citation omitted).).

The question presented is whether the Roskas waived all but the parents' procedural due process claims in *Roska I* because their argument referred only to the parents' procedural due process rights.

### 1. Substantive Due Process Claims

A procedural due process claim is separate from a substantive due process claim. "In contrast to substantive due process claims, in procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000) (quotations omitted). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007) (quotations omitted). Substantive due process, however, "protects certain 'fundamental liberty interests' from deprivation by the government, *regardless* of the procedures provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (emphasis added). The Supreme Court has long recognized the right to familial relations as a component of substantive due process;[3] it is

---

[3] *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 760 (1982) ("[U]ntil the state proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of the natural relationship.").

"the rubric under which the Supreme Court has addressed unenumerated rights under the Fourteenth Amendment." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202 n.3 (10th Cir. 2003).

The Roskas' argument in *Roska I* made no attempt to distinguish between these different claims, declining to mention substantive due process or cite to a case discussing such claims. Neither do the Roskas' appellate briefs attempt to show how these claims were argued on appeal from the dismissal of their case. Rather, they argue substantive due process "was never at issue, until now." (Appellants' Opening Br. at 21.) This statement completely ignores the fact that *all* claims were at issue in *Roska I*. Therefore, while it may be possible to conjure Roskas' substantive due process claim from the cavalier reference to "family association," it is not our responsibility to write their argument for them. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."). The Roskas failed to specifically raise or argue substantive due process in *Roska I* and any claims thereunder were waived.

2.      The Children's Procedural Due Process Claims

The Roskas only citation in their brief in *Roska I* was to *Malik*, which does not address the children's procedural due process rights expressly or by implication. The Roskas' argument did not specifically address the children's interest or argue in favor of extending our holding in *Malik*. Further, they cited no cases in which children were held to have a constitutionally protected procedural due process right under these

- 8 -

circumstances.  Rather, the cases cited discussed only the parents' rights to pre-removal process.  Accordingly, *Roska I* addressed only the parents' procedural due process rights.

Following our decision in *Roska I*, the district court considered the parties' cross-motions for summary judgment on March 26, 2004.  In considering the parties' arguments on the children's standing to bring a due process claim, raised by the Social Workers, the district court held:

> The cases cited by Defendants speak only of a parent's right to familial association.  However, they do not expressly limit such rights to only parents.  Nonetheless, both parties agree that they can find no case law recognizing a child's liberty interest in familial association.  Therefore, even if this court were to hold that the children have liberty interests in their familial associations, that right would not have been clearly established at the time of the conduct in question.  Accordingly, Defendants are entitled to qualified immunity from liability to the children.

*Roska I*, 311 F. Supp. 2d at 1317.  On May 13, 2005, we dismissed the Roskas' appeal from this decision, concluding the order granting immunity to the Social Workers on the children's claims was not immediately appealable while claims remained pending in the district court.  Therefore, the issue was not addressed in *Roska II* and was not waived by that appeal.

On remand from our decision in *Roska II*, the Roskas filed a motion with the district court to set aside its order dismissing the children's claims, arguing our 2006 unpublished decision in *Suasnavas v. Stover*, 196 Fed. Appx. 647 (10th Cir. 2006) (unpublished), which relied on *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985), held the children's right to familial association had been clearly established since 1985.  The motion did not distinguish the children's procedural and substantive due

process claims. The Social Workers argued the court's ruling granting qualified immunity on the children's procedural due process claim should stand because the Roskas failed to cite any case law which clearly established such right and *Suasnavas* and *Trujillo* dealt only with substantive due process, not the children's right to pre-deprivation procedure. In reply, the Roskas argued they were not required to argue the substantive and procedural claims separately to maintain both. Not surprisingly, they cited no case for this proposition.

The district court held:

> [Social Workers] . . . contend that the children's claims are foreclosed by the Tenth Circuit's opinion in the first appeal. The first appeal was brought after Judge Benson had dismissed all of the claims in this case. Therefore, in the first appeal, the Tenth Circuit addressed each of Plaintiffs' claims. The court's discussion of Plaintiffs' claim regarding a right to maintain a family relationship, which is the claim Plaintiffs now assert involves the children's liberty interest in familial association, focused only on the procedural due process rights to notice and a hearing before the removal of a child. First, in finding that Plaintiffs had sufficiently alleged a violation of their due process rights, the Tenth Circuit discussed only the right to a parent's right to notice and hearing before a temporary removal of a child. Next, in determining that the law on this claim was clearly established, the court relied on *Malik v. Arapahoe County Dep't of Soc. Servs.*, in which the court held that it was "clearly established that, except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." The court did not address the claim as a substantive due process liberty interest or as a claim by the siblings. It also did not recognize whether the siblings would have a similar right to procedural due process before the removal of a sibling. The court agrees with Defendants that the only claim surviving the Tenth Circuit's first decision was the parents' procedural due process rights to notice and a hearing.

*Roska*, 2007 WL 1557418, at *2. The district court also noted:

> The Tenth Circuit's ruling is consistent with this court's previous ruling that the children's claims were not clearly established. *Suasnavas* involved

a substantive due process claim under Section 1983 whereas this case involves only a procedural due process claim. The Tenth Circuit clearly construed Plaintiffs' claim to maintain a familial relationship as only a procedural due process claim. Therefore, Plaintiffs' Motion to Set Aside Order Dismissing Claims is denied.

*Id.* at \*3.

On appeal, the Roskas' opening brief again argued *Suasnavas* and *Trujillo* clearly established the children's right to procedural due process. They maintained the existence of a substantive right automatically gives rise to a procedural right. They cited no law for this proposition and they did not address the district court's holding this claim was waived because it was not raised in *Roska I*. Similarly, the Social Workers' response did not argue the court's determination should be affirmed because the children's procedural argument was waived but because *Suasnavas*, an unpublished opinion, discussed substantive, not procedural, due process rights. Therefore, the Social Workers argued the court correctly held the children's right to procedural due process was not clearly established.

The district court correctly held that the *Trujillo* and *Suasnavas*[4] opinions did not clearly establish the law regarding a procedural due process claim because both cases dealt only with substantive due process. *Trujillo*, 768 F.2d at 1187 (plaintiffs, mother and adult daughter, alleged the wrongful death of their adult son and brother while in prison

---

[4] "In determining whether the law was clearly established, . . . we may not rely upon unpublished decisions." *Green v. Post*, 574 F.3d 1294 (10th Cir. 2009). It appears, however, that we recently retreated from this rule as a definitive statement and may consider unpublished decisions to the extent they are "uncontroversial and establish no new precedent" and are given the persuasive effect of authority from another circuit. *Id*.

deprived them of their constitutional right of familial association); *Suasnavas*, 196 Fed. Appx. at 654 (recognizing the substantive due process right to familial association extended to a parent with respect to her child, a child with respect to her parents, and a grandparent with respect to his or her grandchildren.) Neither case discusses procedural rights or the adequacy of procedures because these issues are irrelevant to establish a substantive due process claim. The distinction between procedural due process and substantive due process claims may be best illustrated in footnote 5 of the *Trujillo* decision where we noted:

> [T]he familial relationships in this case do not form the outer limits of protected intimate relationships. As the Court in [*Roberts v. United States Jaycees*] further explained, "a broad range of human relationships . . . may make greater or lesser claims to constitutional protection . . .," requiring "a careful assessment of where a particular relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." 104 S. Ct. at 3251. Those characteristics which would indicate a protected association include smallness, selectivity, and seclusion. *Id.* at 3250. We need not make such an assessment here, since the relationships at issue clearly fall within the protected range.

768 F.2d at 1189 n.5. Thus, difference between a substantive and procedural due process claim is distinguished by the scope of the parties who retain the requisite interest. All those with a recognized right to familial association do not necessarily have a protected interest in procedure. For example, merely because *Suasnavas* recognized a grandparent has a substantive right to familial association with a grandchild does not mean the same grandparent would have a separate and distinct procedural due process right apart from that of the parents prior to removal of the grandchild from the parents' home.

In their reply brief, the Roskas abandon their reliance on *Suasnavas* and, for the

- 12 -

first time, direct our attention to another unpublished decision, *Burgess v. Houseman*, where we stated: "A minor child 'enjoys a liberty interest requiring that procedural due process accompany her confinement.'" 268 Fed. Appx. 780, 784 (10th Cir. 2008) (unpublished) (quoting *J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir. 1997)). *Burgess* concluded this right has been clearly established since 1997. *Id.* The *Roskas* argue this case law requires us to reinstate the children's procedural claims and remand for a new trial. In a sur-reply brief, the Social Workers urge us to ignore *Burgess* because it was wrongly decided and determine *J.B.* stated only an "abstract right" without discussing what procedures were required. (Appellees' Sur-Reply Br. at 5.) Thus, *J.B.* did not clearly establish a constitutional violation for the purposes of denying qualified immunity. We decline to engage in either analysis.

The Roskas presentation of the case law supporting their argument is too little, too late. Even if the children's procedural due process claims survived *Roska I*, the Roskas were required to give the district court an opportunity to determine whether the right was clearly established. Once the Social Workers raised the qualified immunity defense, the Roskas "carried the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Green*, 574 F.3d at 1300 (quotations omitted). Our discussion in *J.B.* was available to the Roskas throughout these proceedings which span over a ten-year period. They did not choose to apprise the district court of arguably relevant precedent nor did they cite to *J.B.* in their previous appeals. Indeed, they waited until their reply brief to do so here and give no reason for their failure to address the matter in district court. We will not

consider what is tantamount to an entirely new argument submitted in a reply brief.
*United States v. Wayne*, 591 F.3d 1326, 1332 (10th Cir. 2010) (an argument raised for the first time in a reply brief is waived). The district court did not err in concluding the Roskas failed to meet their burden to show the children's procedural due process rights were clearly established, a prerequisite to the denial of qualified immunity.

B.      Rule 68 Offer of Judgment

At the time Defendants made their offer,[5] Rule 68 provided:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money . . . specified in the offer, with costs then accrued . . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

"Under this scheme, the defendant can protect itself from the costs associated with protracted litigation by making a formal offer of judgment. If the final judgment is less than the settlement offer, the otherwise 'prevailing' plaintiff is precluded from recovering his post-offer costs." *Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1404 (10th Cir. 1993). "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesney*, 473 U.S. 1, 5 (1985).

The language of an offer of judgment is construed according to ordinary contract principles. *See Stubblefield v. Windsor Capital Grp.*, 74 F.3d 990, 992-92 (10th Cir. 1996); *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1996); *Goodheart Clothing*

---

[5] Rule 68 was amended in 2007 and again in 2009. The changes are irrelevant for our purposes. *See* Fed. R. Crim. P. Rule 68 advisory committee's notes.

*Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992). The district court's determination whether to grant costs under Rule 68 is reviewed for abuse of discretion and "its underlying factual findings for clear error." *First Nat'l Bank of Turley v. Fidelity & Deposit Ins. Co. of Md.*, 196 F.3d 1186, 1189 (10th Cir. 1999).

The Roskas moved for an award of costs and attorney's fees. Because 42 U.S.C. § 1988(b) allows a prevailing plaintiff to recover attorney's fees and costs from a defendant in a § 1983 action, the district court granted the Roskas' request, but capped their recovery as of the date the Social Workers made their first Rule 68 offer of judgment. *See Marek*, 473 U.S. at 9 ("Since Congress expressly included attorney's fees as 'costs' available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68."). The court determined the Roskas were liable for the Social Workers' costs from that date. The Roskas contend the court erred because the Social Workers' offer was not valid under Rule 68 for two reasons: (1) it was not an unconditional offer and (2) the failure to apportion the amount being offered to each individual plaintiff created an unacceptable ambiguity.

1.    Unconditional Offer

The Roskas argue a Rule 68 offer of judgment "must specify a definite sum for which judgment may be entered, which plaintiff can either accept or reject. It must be unconditional and must include 'costs then accrued.'" (Appellant's Opening Br. at 27 (quoting 12 CHARLES ALAN WRIGHT, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 3002 (1973)). They contend the June 25, 2000 offer was  invalid because it conditioned the offer on dismissal of the case.

- 15 -

In response, the Social Workers claim it was not a "condition" but merely an affirmation the case would be over if the Roskas accepted the offer. The district court concluded the offer was valid, stating:

> Plaintiffs' contention . . . has no specific support from case law . . . . A judgment essentially dismisses a case. The offer in this case allowed for judgment to be entered against Defendants and the case to be dismissed. The court typically enters judgment and closes the case. The court finds no appreciable difference between the dismissal of a case and the closing of a case.

*Roska,* 2007 WL 4165750, at *2.

On appeal, the Roskas maintain *any* condition in an offer of judgment renders the offer invalid for the purposes of Rule 68. This is simply not the law. *See Lang v. Gates*, 36 F.3d 73, 75 (9th Cir. 1994) (a defense offer conditioned upon joint acceptance by both plaintiffs qualifies for Rule 68 treatment); *see also Mite v. Falstaff Brewing Corp.*, 106 F.R.D. 434, 435 (N.D. Ill. 1985) (offer not defective on account of "no admission of liability" condition). The Roskas cite no case holding the inclusion of language conditioning an offer of judgment on dismissal invalidates an otherwise unambiguous offer.

We must keep in mind the ultimate purpose of Rule 68—to promote the swift and effective resolution of a lawsuit. In this context, an unconditional offer means a definite and certain offer to pay for the plaintiff's damages and accrued costs with the defendant's clear agreement to allow judgment to enter against him or her. *See Marek*, 473 U.S. at 6 ("[T]he offer [must] be one that *allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued.* In other

- 16 -

words, the drafters' concern was not so much with the particular components of offers, but with the *judgments* to be allowed against defendants."). In this case, the language of the offer stating it was made "in consideration for a dismissal" of the lawsuit, *i.e.,* ending the entire litigation, serves to promote Rule 68's purpose and does not impose a condition which would compromise a judgment being entered against the Social Workers or otherwise invalidate the offer. (Appellants' Appx. at 203.) Applying general contract principles, the offer was clear and unconditional.[6]

2.     Apportionment/Ambiguity

The Roskas also claim the offer was ambiguous because it did not allocate the amounts intended to compensate each plaintiff. Several courts have held an offer of judgment which fails to apportion the offer among various plaintiffs creates an unacceptable ambiguity in the offer. *See, e.g., Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 (2d Cir. 2001) (lump sum offer of judgment to multiple plaintiffs did not trigger Rule 68's cost-shifting provision); *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999) (unapportioned offer of judgment to multiple plaintiffs is not effective under Rule 68).

These holdings are based on two considerations. The first relates to the position of

---

[6] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, is an example of the type of condition which would invalidate a Rule 68 offer. 369 F.3d 91 (2d Cir. 2004). There, the court held the offer of judgment was invalid because it was conditioned upon the approval of a proposed redistricting plan by the local legislative body. *Id.* at 95. It was therefore not an offer within normal contract principles because the plaintiff's acceptance would not have created a contract without further action by the legislative body. *Id.*

the plaintiff in evaluating a Rule 68 offer.  Unlike other contracts, consequences flow

from the rejection as well as the acceptance of a Rule 68 offer of judgment.  *See Gavoni*,

164 F.3d at 1076.  Because "[a] judgment less favorable than the offer requires that a

plaintiff pay the defendant's usually substantial post-offer costs[,]  [t]here must . . . be a

clear baseline from which plaintiffs may evaluate the merits of their case relative to the

value of the offer." *Id.*  When there are multiple plaintiffs, it may be difficult for an

individual plaintiff to determine whether an unallocated offer is reasonable as to his or

her individual claim.

The second consideration concerns the court's ability to determine whether the

plaintiff receives a judgment less favorable than the Rule 68 offer.  An unapportioned

offer may cause uncertainty as to whether the actual judgment received by an individual

plaintiff is less than plaintiff's share of the offer.  A court needs two easily comparable

figures and should not attempt to apportion an offer in the first instance.  *See id.*

The district court recognized the Social Workers' offer of judgment did not

apportion the offer to each Roska family member but provided a lump sum for their

claims.  Nonetheless, the court concluded:

> This case finds no basis for determining that the Plaintiffs could not
> measure the value of the Defendants' offer in relation to the merits of their
> individual claims.  Plaintiffs were represented by the same attorney.  If each
> Plaintiff had been represented by a different attorney then there may have
> been a problem with measuring the value of the offer as to each Plaintiff.
> But Plaintiffs' attorney was in a better position than even the Defendants to
> evaluate the value of each of their claims

. . . .

Plaintiffs cannot escape the requirements of Rule 68 merely because they

gambled and lost.  Rule 68 requires part[ies] to critically consider the value of their cases.  If Rule 68 is interpreted too strictly or technically, it decreases its effectiveness of promoting settlement.

*Roska*, 2007 WL 4165750, at \*3.

When determining whether an offer of judgment is valid, our primary concern is that "the offeree must know what is being offered in order to be responsible for refusing the offer."[7] *Arkla Energy Res. v. Roye Realty & Developing, Inc.*, 9 F.3d 855, 867 (10th Cir. 1993).  In *Arkla Energy*, the parties disputed the non-delivery of gas under an installment contract.  The defendant submitted an offer of judgment for 100,000 Mcf of gas.  The plaintiff responded with a Motion to Clarify Offer of Judgment, citing the ambiguity and incompleteness of the offer, "due primarily to the uncertain value of the gas."  *Id.*  Because the defendant never satisfactorily clarified the offer and "the ambiguity was critical," we determined the district court did not abuse its discretion in refusing to award attorney's fees under Rule 68.  *Id.*

Case law, however, does not go so far as to say a defendant must always apportion an offer between each plaintiff.  *See Harbor Motor Co. v. Arnell Chevrolet-Geo Inc.*, 265 F.3d 638, 649 (7th Cir. 2001) ("[W]e need not go so far as to conclude . . . that Rule 68

---

[7] The Kansas district court has stated it "believes that the Tenth Circuit would conclude that a Rule 68 offer made to multiple plaintiffs is not valid unless it provides individualized offers to each plaintiff."  *Lintz v. Am. Gen. Finance, Inc.,* 76 F.Supp.2d 1200, 1213 (D. Kan. 1999).  *Lintz* involved two unrelated plaintiffs suing for workplace sexual harassment.  Following trial, the jury found that both plaintiffs had been subjected to sexual harassment and further found defendants were liable.  The jury awarded no damages to plaintiff Lintz, but awarded the second plaintiff $25,000 in compensatory damages.  Under these circumstances, we agree the unallocated offer to the plaintiffs was not valid because the two plaintiffs were unable to evaluate the offer as it related to their individual claims.

always requires an exact delineation of the manner in which damages are to be apportioned among multiple parties."). While the practice of allocating the offer as to each plaintiff may increase clarity and ensure the offer is valid, such requirement in every instance would place form over substance.

Thus, the district court was not required, as a matter of law, to consider the Social Workers' unallocated offer of judgment ineffective. Instead, it found as a matter of fact that the June 35, 2000 offer of judgment provided the Roskas sufficient specificity to intelligently evaluate the value of their individual claims against the amount offered. The court did not clearly err in so finding.

The facts of this case are readily distinguished from those cases in which apportionment was necessary. For example, in *Gavoni*, three individual plaintiffs, Gavoni, Rosendale and Jordan, sued for injuries resulting from an elevator malfunction. 174 F.3d at 1073. The plaintiffs sought $825,000 in damages: $230,000 for Gavoni, $320,000 for Rosendale and $275,000 for Jordan. *Id.* at 1074. The defendant offered a lump sum to the plaintiffs of $10,000. *Id.* The jury awarded Gavoni and Rosendale $2,000 each and Jordan $2,500. *Id.* The court held the defendant's offer of judgment was invalid because, *inter alia*, "[t]he plaintiffs simply could not have evaluated the individualized values of the offer." *Id.* at 1076.

Unlike the plaintiffs in *Gavoni* (and other cases), the Roskas were not individuals with competing claims suing for separate physical injuries. This was a single family represented by one attorney, claiming mental and emotional damages arising from the same set of facts. Under these circumstances, the failure to apportion the offer does not

- 20 -

create a "potential [for] derivative litigation" over its division or the associated costs and attorney's fees. *Id.* at 1077. Moreover, unlike the plaintiffs in *Arkla Energy Resources*, the Roskas did not notify the Social Workers that the offer appeared ambiguous nor did they request clarification.

We are also mindful that the Roskas did not disclose their assessment of individual damages to the Social Workers at any point in this protracted litigation. Their Amended Complaint sought a collective judgment on their due process claim "in the amount of $5,000,000.00 for emotional and mental suffering, and $15,000,000.00 for punitive damages." (Appellants' Appx. at 51.) No further factual support or computation as to individual damages was provided, even though the Federal Rules of Civil Procedure require such disclosure. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("[A] party must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by the disclosing party—who must also make available . . . documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered.").

Finally, we note the Roskas did not state the offer made on June 25, 2000, was rejected because they could not assess its applicability to the individual claims. Rather, in their own words, "[the] offer of judgment was a token offer conditional upon dismissal of the Roska case. Had the Roskas accepted the offer, it is possible that the Court would have denied their request for attorney's fees altogether, even though the offer agreed to pay them." (Appellants' Opening Br. at 34 (citing *Fisher v. Kelly*, 105 F.3d 350 (7th Cir.

1997).)[8]  Thus, according to the Roskas, "[i]t would have been folly for [them] to have accepted the offer."  (*Id.*)  This argument makes clear the Roskas were not interested in accepting the offer even if it allocated amounts to individuals.

Under the facts of this case, the purposes of Rule 68 were fully and fairly met by the Social Workers' offer of judgment.  The Roskas were in a position to determine the value of each family member's claim and intelligently assess the risks associated with rejecting the $5,000 offer.  If there was any confusion, the Roskas could have asked for clarification.  The $5,000 offer as compared to the $2.00 judgment provided precise figures for the district court to compare.  Accordingly, we conclude the district court did not clearly err in finding the Roskas and their attorney were able to intelligently assess the offer and did not abuse its discretion in determining the Social Workers' June 25, 2000 offer of judgment was valid under Rule 68.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[8] In *Fisher*, the plaintiff accepted a Rule 68 Offer of Judgment for "$7,500 plus costs accrued to date."  105 F.3d at 352 (quotations omitted). The Court of Appeals upheld the district court's denial of pre-offer attorney's fees, holding the plaintiff was not entitled to fees because the defendant had acted gratuitously in the face of a "frivolous, unreasonable, or groundless" lawsuit.  *Id.* at 353 (quotations omitted).  We do not comment on the *Fisher* court's holding but observe that unless the Roskas feared their lawsuit would be considered "frivolous, unreasonable or groundless," they had no reason to fear their attorney's fees and costs would be forfeited by their acceptance of the offer.